Case 2:24-cv-00177-JRS-MKK   Document 1   Filed 05/13/24   Page 1 of 9 PageID #: 1

FILED
05/13/2024
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUKE JIMENEZ, )
                    Petitioner, )  Civ. Case No. <u>Unassigned</u> 2:24-cv-177-JRS-MKK
)
v. )
)
COLETTE PETERS - DIRECTOR OF )  PETITION FOR WRIT OF MANDAMUS
THE FEDERAL BUREAU OF PRISONS, )
                    Respondent. )

COMES NOW, Duke Jimenez, the Petitioner in this matter, pro se, and does hereby submit this Petition for Writ of Mandamus.

## I. SUMMARY

The Petitioner, Duke Jimenez, brings this Writ of Mandamus with the intent of Compelling Director Peters to rescind her order to dissolve and replace the Challenge Program at Terre Haute Penitentiary. Mr. Jimenez will show 1) That he and the residents of Terre Haute USP have a clear right of access to program; 2) That Director Peters has a non-discretionary duty to allow unencumbered programming to all inmates during their entire term of incarceration; and 3) That no other relief is available other than for a writ to issue.

## II. Statement of Facts

1) The Petitioner, Duke Jimenez, is currently a Phase III and soon to be Graduate, of the Challenge Program in Terre Haute USP in Terre Haute, IN. See Exhibit A.

2) The Challenge Program is a 9 month intensive mental health and substance abuse treatment program. It covers 5 out of 6 FSA Psychology Needs: Anger/Hostility, Antisocial Peers, Cognitions, Mental Health, & Substance Use. See Exhibit B.

3) On March 19, 2024, the Challenge Program Community was told by BOP staff that the Director/Respondent had ordered the Challenge Program to be dissolved, and replaced by a new pilot program called "Pathway".

4) Challenge Program has been operating at Terre Haute USP for over 15 years. It is a Congressionally-recognized Evidence-Based Recidivism Reduction (EBRR) Program. During it's operation, hundreds of inmates have successfully graduated from the Challenge Program in Terre Haute USP.

5) During the COVID-19 pandemic, and for a while afterwards, graduation rates fell dramatically due to constant institutional lockdowns, staff shortages, quarantines, etc. Recently, lockdowns have decreased, and the Challenge Program received a new Program Coordinator, Dr. Hughes. In a short time Dr. Hughes has already dramatically improved almmost every aspect of the Challenge Program and made it much more efficient than the decline it had fallen into due to the COVID pandemic. It is now back to it's pre-Covid "glory".

6) There is a sever shortage of psychologists and psychology staff at Terre Haute USP. They have multiple vacant positions that they cannot fill, and due to this, barely have enough staff to cover FSA groups to meet the inmate population's needs.

7) The Challenge Program is the only residential mental health and substance abuse program at Terre Haute USP.

8) Pathway is not a recognized EBRR and does not cover any FSA needs other than substance use.

9) BOP Staff has admitted that the only reason that Pathway is replacing the Challenge Program is because they are receiving a huge amount of funding.

10) Pathway is designed for inmates who are constant drug-users, receive disciplinary infractions, can't stay out of the Special Housing Unit (SHU), etc. It is an involuntary program people will be forced into, and if they refuse to "program" they will be "locked down" (in their cells 24/7). None of the inmates are Terre Haute USP are currently eligible for this new pilot program, including any inmates in Challenge.

11) The Challenge Program can only be effective on "drop-out" yards. Drop-out yards

are institutions where one must debrief and renounce gang affiliations, prison politics, etc. Tucson, Coleman II, and Terre Haute are the only dropout Penitentiaries. Due to the politics of non-dropout "active" yards, and the programming requirements of the Challenge Program, there is an irreconcilable conflict, and the Challenge Program can only be truly effective on drop-out yards, yet the BOP has elected to install the Challenge Program on 10 active yards and now wants to close 1 of the only 3 dropout Challenge Programs.

12) Conversely to #11, Pathway can only be truly effective on an active yard. The inmates the BOP wishes to house in Pathway will primarily be active inmates. This creates a huge security & logistics issue, as active inmates cannot be housed at inactive institutions.

13) Most of the FSA Programs at Terre Haute USP besides the Challenge Program, are years behind on their waiting lists. For perspective, the medical department is better staffed than psychology at Terre Haute USP, and yet dental is only on it's 2019 waiting list. It's five years behind. There are many inmates who will never be able to cover any Psychology FSA Needs at all during their incarceration at Terre Haute USP if the Challenge Program is closed.

### III. Jurisdiction
#### a. Statutory Authority

This Petition for Writ of Mandamus is brought pursuant to 28 USC §1361 and the All Writs Act. Requested relief involves the compulsion of an officer of the United States to perform [her] duty, as enumerated within the language of §1361. Therefore, this action is brought pursuant the proper statutory vehicle.

#### b. Exhaustion Requirement

As this action is brought by an incarcerated individual, the Prison Litigation Reform Act's requirement of the exhaustion of administrative remedies would normally

apply. However, in this case, the Petitioner is unaware of any administrative remedy procedure or process which could actually remedy the issue, making the normal FBOP administrative remedy process futile. The relief requested at the heart of this action is for the FBOP Director's order to dissolve the Terre Haute Challenge Program to be rescinded, allowing the continued operation of the Challenge Program.

The BOP's Administrative Remedy Process, at the highest level of appeal, pursuant to 28 CFR §542.15 and PS1330.18, only goes up to the National Appeals Administrator. The National Appeals Administrator does not have the authority or ability to grant the requested relief, as he/she cannot overturn an Executive directive or order by the Director of the BOP, making any attempt to do so futile at every level. Orr v. Assurant Emple. Benefits, 786 F.3d 596 (7th Cir. App. 2015), "Generally, a failure to exhaust administrative remedies will be excused in few limited circumstances - when resort to administrative remedies would be futile, Gallegos v. Mount Sinai Med. Ctr., 210 F.3d 803, 808 (7th Cir. 2000), when the remedy provided is inadequate, id., or where there is a lack of access to meaningful review procedures, Schorsch v. Reliance Standard Life Ins. Co., 693 F.3d 734, 739 (7th Cir. 2012)." The Petitioner is unaware of any other grievance procedures within the BOP which would not be futile. "Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about. See Pavey v. Conley, 663 F.3d 899, 906 (7th Cir. 2011); Curtis v. Timberlake, 436 F.3d 709, 712 (7th Cir. 2005); Carroll v. Yates, 362 F.3d 984, 985 (7th Cir. 2004). They are not required to divine the availability of other procedures." (quoted from King v. McCarty, 781 F.3d 889 (7th Cir. App. 2015). However, in a good faith effort to provide both notice and to request a remedy, the Plaintiff did send a letter to the Director on March 22, 2024. See Exhibit C. No response has been received.

"Generally, a district court is unable to waive a statutorily-mandated exhaustion requirement. See Shawnee Trail Conservancy, 222 F.3d at 389. However, a court may waive the exhaustion requirement where exhaustion is futile. See Smith v. Blue

Cross & Blue Shield United of Wisconsin, 959 F.2d 655, 658-59 (7th Cir. 1992)." (quoted from Citadel Sec., LLC v. Chi. Bd. Options Exch., Inc., 808 F.3d 694 (7th Cir. App. 2015)). Therefore, due to the unavailability of any non-futile administrative remedies, the Plaintiff respectfully requests this Court to waive the exhaustion requirement.

## IV. Legal Argument

The standard for establishing relief under Mandamus is: 1) The Petitioner's clear right to relief sought; 2) a plainly defined and peremptory duty on the part of the respondent to do the act in question; and 3) no other adequate remedy at law. See Adebowale v. McAleenan, 781 Fed. Appx. 510 (7th Cir. App. 2019).

Prior to the First Step Act of 2018, inmates did not have a right to program, but that has changed with the implementation of the Risk and Needs Assessment System, and other relevant portions of the FSA, as outlined below:

> 18 USC §3632(a) - ...a risk and needs assessment system (referred to in this subchapter as the 'System'), which shall be used to--
>
> > "(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
> > (2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;
> > (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);
> > (4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;
> > (5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that--

        (A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;
        (B) to address the specific criminogenic needs of the prisoner; and
        (C) all prisoners are able to successfully participate in such programs;

and

18 USC §3621(h)(6) - REQUIREMENT TO PROVIDE PROGRAMS TO ALL PRISONERS; PRIORITY. -"The Director of the Bureau of Prisons shall provide all prisoners with the opportunity to actively participate in evidence-based recidivism reduction programs or productive activities, according to their specific criminogenic needs, throughout their entire term of incarceration..."

As this Court can see, Congress has clearly delineated the statutory language to create a "Risk and Needs assessment System". Not only does this system determine which individualized and specific criminogenic "needs" each prisoner has, but 18 USC §3621(h)(6) quite literally commands the Director of the Bureau of Prisons to "provide <u>all</u> prisoners with the opportunity to <u>actively</u> participate in evidence-based recidivism reduction programs or productive activities, <u>according to their specific criminogenic needs</u>, throughout their <u>entire</u> term of incarceration." (Emphasis added) The language here is unambiguous and clear. Congress has created the right to program, based on a prisoner's specific criminogenic needs, via the First Step Act. As a matter of fact, most rights enumerated within the Consitution don't have a statutory enforcement mechanism, yet the right to program based on one's specific criminogenic needs does have an enforcement mechanism. It's codified at 18 USC §3621(h)(6), see supra. This shows that not only does the Plaintiff have a clear right to actively participate in EBRR programming based on his specific criminogenic needs, throughout his entire period of incarceration, as does every other Terre Haute inmate, but also that the Director/Respondent has a clear statutory duty to provide for this right.

The Risk and Needs Assessment System assigns programming needs based on criteria established by the Attorney General in consultation with the Independant Review

(6)

Committee (See 18 USC §3632(a)). This clearly shows that the BOP Director's authority in enforcing compliance to programming standards is statutory, and not discretionary.

Additionally, just the act of replacing a well-established, Congressionally-recognized EBRR program with a non-EBRR program simply for funding purposes is an arbitrary and capricious action. Closing Challenge Program will cause irreparable harm to the Plaintiff, as well as the majority of inmates in Terre Haute USP.

### Why Does Eliminating Challenge Program Preclude the Ability to Actively Program?

As established in the Statement of Facts, there are unreasonably lengthy wait times for nearly every EBRR program in Terre Haute USP, other than the Challenge Program. A cursory glance over the list of available programs at Terre Haute will impress most observors, but the truth is, even if a prisoner is able to wait years to get into one of the other programs offered, they only last for a short time. For example, it can take years to enter the Non-Residential Drug Abuse class, which provides for 2 FSA Needs; Cognitions and Substance Use. However, its a 24 hour class. Basic Cognitive Skills Class is only 18 hours. Seeking Strength is only 12-16 hours. The longest non-residential psychology program offered at Terre Haute USP is Dialectical Therapy Behavior, which is 104 hours. Even Terre Haute's other residential program, the Life Connections Program, which takes 18 months and 1,500 hours to complete, only covers Family/Parenting FSA Needs. Without the Challenge Program, the Plaintiff and hundreds of other inmates won't be able to meet their FSA Needs, simply because they are housed at Terre Haute.

The reason the Challenge Program is so vital to programming needs, is because of it's structure. Even after completing the program, prisoners can continue to program with AA/NA groups, Victim Impact, Individualized Treatment Staff, Anger Management, and a host of community member-ran support groups. These are all productive activities and another form of FSA programming. Additionally, trustworthy

and caring community members are selected by Challenge Treatment Staff as Senior Guides. The job of Senior Guides is to welcome new members, run support groups, assist members with programming questions, resolve conflicts, and help to maintain a positive and caring atmosphere within the community. Even the design of the unit itself is to maintain a more positive attitude. There are inspiring murals, quotes, and other decorative artwork all around the unit, thousands of hours of volunteer Challenge community member work.

### Why is No Other Relief Available?

The only other type of relief the Plaintiff could think of to accomplish the relief sought was a suit asking for injunctive relief. However, after legal analysis, the Plaintiff realized that since the Risk and Needs Assessment System and available programs are fluid and dynamic, changing constantly, a simple injunction would be ineffective. A permanent injunction is just that. Permanent. An order compelling the Driector to rescind her order to shut down the Challenge Program is not permanent. Other conditions can be included, allowing for the eventual shutdown under the condition that equivalent or greater programming opportunities will be guaranteed. Yet, as for the relief sought, the only available avenue is by Writ of Mandamus.

### V. Conclusion

The Petitioner has established his clear right to the relief sought; a plainly defined and peremptory duty on the part of the Respondent to do the act in question; and established that there is no other adequate remedy at law other than the requested relief. He respectfully prays this Court to find the same.

### VI. Requested Relief

For the reasons discussed and explained herein, the Plaintiff respectfully requests this Court to: 1) Compel the Director of the Bureau of Prisons to rescind any orders to dissolve or shut down the Challenge Program in Terre Haute USP, and

to leave it operating as it has been; and 2) any other relief this Court finds appropriate.

Respectfully submitted,

Date: 5 / 8 /2024

_Duke Jimenez #26788-055_

## VII. Unsworn Declaration

I, Duke Jimenez, the Petitioner in this action, pro se, do hereby declare under penalty of perjury pursuant to 28 USC §1746 that the foregoing facts, allegations, claims, and statements are true and accurate to the best of my belief and ability.

_Duke Jimenez #26788-055_

## VIII. Certificate of Service

I, Duke Jimenez, the Petitioner in this action, pro se, do hereby certify that I placed this Petition for Writ of Mandamus, and attached Motions, into the hands of prison officials, to be mailed with Full US Postage Prepaid via the prison legal mail system, on this 5 day of May, 2024. These documents were mailed to the following recipients:

Director of the BOP
320 First St., NW
Washington, DC 20534

Clerk of Court
Southern District Of Indiana
Terre Haute Division
921 Ohio Street, Room 104
Terre Haute, IN 47801

_Duke Jimenez #26788-055_